**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

| | |
|---|---|
| POLYONE CORPORATION,<br><br>        Plaintiff,<br>v.<br><br>WESTLAKE VINYLS, INC.,<br><br>        Defendant. | Case No.  5:18-cv-107-TBR<br><br>Electronically Filed |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION TO ENJOIN ARBITRATION**

  Plaintiff PolyOne Corporation ("PolyOne") files this Complaint for Declaratory and Injunctive Relief and Petition to Enjoin Arbitration against Defendant Westlake Vinyls, Inc. ("Westlake"), alleging as follows:

**PRELIMINARY STATEMENT**

  On May 19, 2017, PolyOne filed an Arbitration Demand seeking to allocate liability for certain environmental costs related to the Westlake Chemical Facility in Calvert City, Kentucky pursuant to the December 19, 2007, Settlement and Release Agreement to resolve the parties' prior litigation in this Court. ("2007 Settlement Agreement," attached hereto as Exhibit 1.) An arbitration under the 2007 Settlement Agreement is currently pending before a three-member JAMS panel (the "Arbitration"). A seven-week arbitration hearing is scheduled to begin on August 6, 2018, in Louisville, Kentucky.

  On February 6, 2018, the Tenth Circuit issued an opinion in *Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018). The opinion relied in part on the Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), which held that an

14547799.1

arbitration clause allowing for de novo review of an arbitrator's award conflicts with the Federal Arbitration Act ("FAA") and is therefore invalid and unenforceable. *Potawatomi* extended the Supreme Court's *Hall Street Associates* ruling and concluded that when such an invalid judicial review provision is material to the bargain that the parties struck in agreeing to arbitrate their dispute, the judicial review provision cannot be severed from the agreement to arbitrate as a whole, and therefore the parties' agreement to arbitrate is invalid and unenforceable in its entirety.

In light of the Tenth Circuit's recent ruling in *Potawatomi*, PolyOne seeks a declaration that: (1) the provision in the 2007 Settlement Agreement allowing for de novo judicial review of an arbitration award is invalid; (2) the de novo judicial review provision is material to and not severable from the parties' agreement to arbitrate; (3) the parties' obligation to arbitrate as set forth in the 2007 Settlement Agreement is unenforceable; and (4) the arbitration provisions of the 2007 Settlement Agreement are severable from the other provisions of the Agreement. PolyOne also seeks an order enjoining the Arbitration of the dispute between the parties.

## PARTIES

1. Plaintiff PolyOne Corporation is an Ohio Corporation with its principal place of business in Avon Lake, Ohio. PolyOne was formed in August 2000, when The Geon Company ("Geon") merged with M.A. Hanna Company. Geon was formed in 1993, when Goodrich Corporation ("Goodrich") divested itself of the assets of its vinyl division to create Geon.

2. Defendant Westlake Vinyls, Inc. is a Delaware Corporation with its principal place of business in Calvert City, Marshall County, Kentucky.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

the amount in controversy exceeds the sum or value of $75,000, and PolyOne and Westlake are citizens of different states.

4. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202 because an actual controversy exists.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to PolyOne's claims occurred in this judicial district, and because Westlake resides in this judicial district.

6. Assignment to this jury division is proper pursuant to Civil L.R. 3-2 because Westlake resides in Marshall County, Kentucky.

## GENERAL ALLEGATIONS

**A. PolyOne and Westlake Are Currently Parties to an Arbitration Being Conducted Under a 2007 Settlement Agreement That Resolved Their Prior Litigation in This Court.**

7. Westlake owns and operates a vinyl chloride monomer ("VCM") manufacturing facility in Calvert City, Marshall County, Kentucky ("Site"). The Site houses three chemical manufacturing facilities, all owned and operated by Westlake: (1) the Chlorine Plant, which manufactures chlorine gas; (2) the Ethylene Plant, which produces ethylene; and (3) the EDC/VCM Plant, which produces ethylene dichloride ("EDC") and VCM, the final output of the facility. The Westlake plants have the capacity to manufacture 1.3 billion pounds of VCM per year.

8. Westlake purchased the Westlake plants from Goodrich in two separate transactions, in 1990 and 1997. Both asset transfer agreements include mutual indemnity provisions that require Goodrich to indemnify Westlake for environmental costs attributable to Goodrich's activities at the Calvert City Site, and Westlake to indemnify Goodrich for

environmental costs attributable to Westlake's activities at the Site. PolyOne is responsible for paying certain Goodrich environmental liabilities at the Site under the 1993 Separation Agreement between Goodrich and Geon, PolyOne's predecessor company. PolyOne also stands in Goodrich's shoes for purposes of enforcing the 1990 and 1997 Goodrich agreements with Westlake, and can bring claims based on Goodrich's right to indemnification under those agreements.

9. Beginning in 2003, the parties engaged in litigation in this Court related to the parties' environmental liabilities at the Site. (*See Westlake Vinyls, Inc. v. Goodrich Corporation*, W.D. Ky. Case No. 5:03-cv-00240-TBR.) After four years of litigation, Westlake, Goodrich, and PolyOne reached a settlement to resolve the litigation in 2007.

10. Under the terms of the 2007 Settlement Agreement, the parties agreed to resolve liability for environmental investigation and remediation costs arising on or before July 31, 2007. (2007 Settlement Agreement § 2.2(a).) PolyOne and Westlake agreed to arbitrate the allocation of certain environmental costs arising after July 31, 2007. (*See* 2007 Settlement Agreement §§ 3-6.) Goodrich is not a party to the arbitration provisions of the 2007 Settlement Agreement. The 2007 Settlement Agreement requires PolyOne and Westlake to arbitrate the amount and allocation of certain specifically defined environmental costs related to the Site.

11. PolyOne filed a Demand for Arbitration under the 2007 Settlement Agreement seeking an allocation of Allocable Costs on May 19, 2017. The Arbitration is currently pending before a three-member JAMS panel, but presently there has been no allocation of Allocable Costs between the parties. A seven-week arbitration hearing is scheduled to begin on August 6, 2018.

  **B.** **The Arbitration Provisions of the 2007 Settlement Agreement Include a Judicial Review Clause That Allows for A De Novo Judicial Determination of the Amount and Allocation of Allocable Costs Following the Issuance of the Arbitrators' Award.**

  12. Section 6.3 of the 2007 Settlement Agreement provides that either PolyOne or Westlake "may file a complaint, based on the indemnity provisions of the 1990 Agreement and/or the 1997 Agreement and/or this Agreement, seeking a de novo judicial determination of (1) the amount of the Allocable Costs, and/or (2) the appropriate dollar division of the Allocable Costs between the Parties." (2007 Settlement Agreement § 6.3.) Any judicial determination proceedings must take place in the U.S. District Court for the Western District of Kentucky. (*Id.*) Importantly, and demonstrating the materiality of the judicial review provision, Section 6.3(c) of the 2007 Settlement Agreement states that "[t]he Parties agree that they shall not dispute a Party's right to bring a claim for judicial relief as provided for in this Section 6."

  13. In addition, Section 6 includes detailed procedural and substantive requirements that further demonstrate the materiality of the judicial review provision. For example:

   a. Section 6.1 provides that "the filing of a complaint under Section 6.3 . . . shall render the arbitrators' award null and void."

   b. Section 6.4 includes detailed requirements regarding interim payments of arbitration awards pending judicial review, which provide that any new allocation of Allocable Costs takes effect when the judicial determination becomes final, or within two years, whichever is earlier.

   c. Section 6.5 defines how much the allocation of costs must change in the judicial determination proceeding for purposes of determining who is the prevailing party.

  **C.** **The Arbitration Provisions of the 2007 Settlement Agreement Are Invalid and Unenforceable**.

  14. Arbitrations conducted under the 2007 Settlement Agreement are subject to the

Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1-2 (stating that the FAA applies where there is a written arbitration provision in a contract "evidencing a transaction involving [interstate] commerce.") Where applicable, the "FAA governs all aspects of arbitration procedure and preempts inconsistent state law." *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996); *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

15. In *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), decided in the year following the 2007 Settlement Agreement's execution, the Supreme Court considered whether provisions in an arbitration agreement allowing review of an arbitration award for "legal error" are preempted by Sections 10 and 11 of the FAA. In *Hall Street Associates*, the Supreme Court held that Sections 10 and 11 of the FAA are the exclusive grounds upon which a district court may vacate or modify an arbitration award. 552 U.S. at 586. When the FAA governs, a judicial review provision in an agreement to arbitrate will be unenforceable if it conflicts with Sections 10 and 11. *Id.* at 584. This is true even if the arbitration agreement does not expressly invoke the FAA. *Id.* at 590.

16. In *Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018), the Tenth Circuit considered an appeal from an Indian Tribe's action to enforce an arbitration award against the State of Oklahoma. The arbitration provision at issue, which was part of a tribal gaming compact, involved the same type of de novo judicial review provision found in Section 6 of the 2007 Settlement Agreement. The court concluded, based on *Hall Street Associates*, that the de novo judicial review provision in the arbitration clause of the gaming compact was invalid and unenforceable. *Id.* at 1235-37. The court further concluded that "[b]ecause the availability of de novo review is a material aspect of the parties' agreement to engage in binding arbitration, and

because *Hall Street Associates* renders the de novo review provision legally unenforceable," the district court erred in failing to find the arbitration clause as a whole unenforceable, and by failing to sever the entire arbitration provision from the remaining provisions of the tribal gaming compact. *Id.* at 1240.

17. The 2007 Settlement Agreement includes a severability provision that requires the same type of materiality analysis that was required under the arbitration agreement at issue in *Potawatomi*. Specifically, Section 14 of the Agreement states:

> In the event that any provision of this Agreement shall be finally determined to be unenforceable, such provision shall, so long as the economic and legal substance of the transactions contemplated hereby is not affected in any materially adverse manner as to any Party, be deemed severed from this Agreement and every other provision of this Agreement shall remain in full force and effect.

18. *Potawatomi* directly impacts the Arbitration. The 2007 Settlement Agreement includes a severability provision that requires the same type of materiality analysis that was carried out by the Tenth Circuit in *Potawatomi*. Indeed, the severability clause in the Agreement specifically requires a court to consider the "economic and legal substance of the transactions contemplated" by the parties in determining whether a contract provision is material and therefore non-severable.

19. Like the materiality clause in *Potawatomi*, the severability clause in the 2007 Settlement Agreement differs from broader severability clauses often found in arbitration agreements. Typically, those severability clauses provide that in the event any provision of an agreement is held to be invalid, the remainder of the agreement would still be enforceable. *See, e.g.*, Roberts v. Blue World Pools, Inc., 2015 WL 5315213, at *5 (W.D. Ky. Sept. 11, 2015) (quoting clause in arbitration agreement). The materiality requirement was critical in *Potawatomi* and is critical in this case.

20. As in *Potawatomi*, the materiality standard set forth in Section 14 of the 2007 Settlement Agreement makes clear that the availability of de novo judicial review is a material aspect of the parties' agreement to arbitrate in the 2007 Settlement Agreement. Section 6 includes detailed, specifically negotiated provisions regarding not only the de novo standard for judicial review of the arbitrators' award, but also regarding interim payments pending the completion of judicial review and the recovery of legal fees and expenses. In particular, the attorneys' fees provision in Section 6.5 differs from the provisions applicable to the arbitration itself (in which each party bears its own fees and costs), and includes a detailed definition as to how much the allocation of Allocable Costs must change for the plaintiff to be deemed the "prevailing party" in the judicial review proceeding. These are not standard fee shifting provisions—they clearly reflect a careful attempt to balance the parties' interest in preserving broad appellate rights against the expense of further litigation. And, critically, Section 6.3(c) of the 2007 Settlement Agreement explicitly states that "[t]he Parties agree that they shall not dispute a Party's right to bring a claim for judicial relief as provided for in this Section 6."

21. In entering into the 2007 Settlement Agreement—which the parties executed before the *Hall Street Associates* decision—the parties agreed to dismiss pending federal litigation, and to arbitrate the allocation of future environmental costs at the Site on the understanding that the parties would have the right to return to federal court and seek de novo review if they were dissatisfied with the result of the arbitration. In so doing, the parties waived their rights to a jury trial and agreed to limit their rights to discovery. The availability of de novo judicial review was an important factor in PolyOne's decision to agree to arbitrate claims for environmental costs incurred after July 31, 2007, and the availability of such judicial review affected the economic and legal substance of PolyOne's rights under the arbitrations provisions

of the 2007 Settlement Agreement.

22. Moreover, the importance of the availability of de novo judicial review to the parties is clear from the face of the 2007 Settlement Agreement. Specifically, Section 6.3(c) of the Agreement states that "[t]he Parties agree that they shall not dispute a Party's right to bring a claim for judicial relief as provided for in this Section 6." Thus, the judicial review provisions of the 2007 Settlement Agreement are material to the parties' agreement to arbitrate, and for that reason, they are not severable from the parties' agreement to arbitrate claims for Allocable Costs under the Agreement. The parties' agreement to engage in binding arbitration is therefore unenforceable, and should be severed from the remaining provisions of the 2007 Settlement Agreement.

**D. The Validity of the Arbitration Provisions of the 2007 Settlement Agreement Is a Question for the Court to Decide.**

23. The 2007 Settlement Agreement expressly limits the arbitrator's jurisdiction to "a determination of the amount of the Allocable Costs that are in issue, if not agreed upon by the Parties, and the amount of Allocable Costs that should be allocated to each Party." (2007 Settlement Agreement, Exh. C § 3.) The Agreement provides that "the arbitrators shall have no jurisdiction to determine any other aspect of the Agreement, including, without limitation, the validity of the Agreement." (*Id.*) Thus, the validity and enforceability of the arbitration provisions is a question for this Court.

## COUNT I

### Declaratory Judgment Under 28 U.S.C. §§ 2201 & 2202

24. PolyOne incorporates by reference the allegations contained in Paragraphs 1-23 as if fully restated herein.

25. An actual controversy has arisen and now exists between PolyOne and Westlake

with respect to the validity of the arbitration provisions of the 2007 Settlement Agreement. PolyOne contends that the judicial review provisions of the 2007 Settlement Agreement are not severable from the parties' agreement to arbitrate claims for Allocable Costs under the Agreement; that the parties' agreement to engage in binding arbitration is unenforceable; and that the arbitration provisions of the 2007 Settlement Agreement should be severed from the remaining, valid provisions of the Agreement.

26. Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties is necessary and appropriate under the circumstances, in addition to such further necessary or proper relief the Court deems appropriate.

## COUNT II

### Injunctive Relief Under Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

27. PolyOne incorporates by reference the allegations contained in Paragraphs 1-26 as if fully restated herein.

28. An Arbitration between Westlake and PolyOne is currently pending before a three-member JAMS panel pursuant to the 2007 Settlement Agreement.

29. Under *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), and *Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018), the parties' agreement to engage in binding arbitration under the 2007 Settlement Agreement is legally invalid and unenforceable. Thus, no valid agreement to arbitrate exists between the parties, and any award issued by the arbitrators in the current proceeding will be null and void.

30. While the parties have already expended significant resources in the Arbitration, discovery has yet to be completed, and a seven-week arbitration hearing is scheduled to start on August 6, 2018. The parties will spend millions of dollars in legal and expert fees to complete

the proceeding.

31. PolyOne recently learned of the Tenth Circuit's February 2018 *Potawatomi* decision and immediately made the arbitrators aware of the decision. On July 5, 2018, PolyOne filed a Motion to Stay the Arbitration before the JAMS panel. PolyOne's Motion requested a stay of the Arbitration to allow this Court to determine if a valid agreement to arbitrate exists between the parties under *Hall Street Associates* and *Potawatomi*. The arbitrators have not yet ruled on PolyOne's Motion. Westlake had not previously raised questions regarding the enforceability of the arbitration provisions of the 2007 Settlement Agreement under *Potawatomi* in the Arbitration proceedings.

32. Although the State of Oklahoma successfully raised its non-severability argument for the first time in the district court in the *Potawatomi* case, it would be pointless to go forward with the Arbitration knowing that either party could seek to challenge the result as null and void under *Potawatomi* if it were dissatisfied with the Panel's award. The parties should not spend millions of dollars more arbitrating this case when they are highly likely to be forced to start over litigating the case in court because the arbitration agreement is found to be unenforceable.

33. If the Arbitration were to proceed, PolyOne would incur substantial additional time and expense litigating its positions in the arbitration proceeding, despite the invalidity of the agreement to arbitrate. Thus, unless Westlake is enjoined from arbitrating the claims pending in the Arbitration, PolyOne will suffer irreparable harm. Furthermore, being compelled to arbitrate a dispute where the parties do not have a valid agreement to arbitrate constitutes irreparable harm.

34. PolyOne has sought to affirmatively raise the issue of the enforceability of the

arbitration provisions of the 2007 Settlement Agreement in the Arbitration, while Westlake has stated it intends to oppose PolyOne's Motion to stay the Arbitration. Further, PolyOne has submitted approximately $11.7 million in environmental costs for allocation, while Westlake has only submitted $4.1 million in costs. In addition, due to rulings in the arbitration, PolyOne is preparing to reimburse Westlake for the $4.1 million in costs submitted by Westlake in the Arbitration. Thus, Westlake like suffer little if any prejudice from a delay in the arbitration proceedings that will allow the Court to address the validity and enforceability of the arbitration provisions of the 2007 Settlement Agreement, and therefore the balance of equities tips decidedly in PolyOne's favor.

35. By reason of the foregoing, the Court should issue an order enjoining the arbitration of the dispute between the parties.

## PRAYER FOR RELIEF

With respect to its Complaint for Declaratory and Injunctive Relief and Petition to Enjoin Arbitration, and based on the foregoing, PolyOne prays for the following relief:

1. A declaration that the judicial review provisions of the 2007 Settlement Agreement are not severable from the parties' agreement to arbitrate claims for Allocable Costs under the Agreement; that the parties' agreement to engage in binding arbitration is null, void, and unenforceable; and that the invalid arbitration provisions of the 2007 Settlement Agreement are severable from the remaining, valid provisions of the Agreement;

2. A temporary restraining order and/or a preliminary and/or permanent injunction enjoining Westlake and its agents, attorneys, or other representatives from prosecuting arbitral proceedings under the 2007 Settlement Agreement, or otherwise taking any actions in furtherance of any such arbitral proceedings;

3. Judgment in PolyOne's favor on all other causes of action described herein and that equitable relief be granted;

4. An award of attorneys' fees and costs of this action to the fullest extent permitted by law; and

5. Any and all additional relief as the Court deems just and proper.

Date: July 10, 2018

BINGHAM GREENEBAUM DOLL LLP


By: /s/Mark S. Riddle
Mark S. Riddle
Aaron W. Marcus
BINGHAM GREENEBAUM DOLL LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone:   (502) 587-3623
Facimile:   (502) 540-2194

HANSON BRIDGETT LLP


By: /s/Davina Pujari
*Davina Pujari
*Lawrence M. Cirelli
*Christopher D. Jensen
*Samir J. Abdelnour
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

Attorneys for PLAINTIFF POLYONE CORPORATION

*Pro Hac Vice Applications to Be Filed

13

14547799.1

## VERIFICATION

I, Dena M. Kobasic, being first duly sworn, verify that the averments of this Verified Complaint for Declaratory and Injunctive Relief and Petition to Enjoin Arbitration are true and correct to the best of my knowledge and belief.

_____
DENA M. KOBASIC

STATE OF OHIO
COUNTY OF __Lorain__

Subscribed and sworn to before me this 9th day of July, 2018.

_____
Notary Public
and Attorney-at-Law
My Commission has no expiration date

[Notarial Seal — State of Ohio]

14547799.1